O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAWRENCE ERIC HENRY,           ) Case No. CV 11-8242-JPR
                               )
                Plaintiff,     )
                               )
          vs.                  ) MEMORANDUM OPINION AND ORDER
                               ) AFFIRMING THE COMMISSIONER
MICHAEL J. ASTRUE,             )
Commissioner of the Social     )
Security Administration,       )
                               )
                Defendant.     )
_____)

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Supplemental Security Income ("SSI") benefits.  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed August 27, 2012, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on January 1, 1989.  (Administrative

1

Record ("AR") 99.)  He has an 11th-grade education and no work experience.  (AR 49, 66, 541, 559, 587.)  As a child, Plaintiff received SSI benefits because of various learning disabilities and behavioral disorders.  (See AR 150.)  After Plaintiff turned 18, his eligibility was reviewed under the rules for determining disability in adults, and on January 9, 2008, he was found to be no longer disabled under those standards.  (AR 149.)  Plaintiff requested a review of the agency's determination; a State Agency Disability Hearing Officer upheld the determination on August 13, 2008.  (AR 61-70.)

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (AR 70.)  A hearing was held on June 14, 2010, at which Plaintiff, who was represented by counsel, appeared and testified on his own behalf.  (AR 551-98.)  Medical Expert Dr. Betty Borden and Vocational Expert ("VE") Gregory Jones also testified, as did Plaintiff's mother, Charlene Givens. (AR 573-98.)  In a written decision issued on July 8, 2010, the ALJ determined that Plaintiff was not disabled.  (AR 16-24.)  On August 3, 2011, the Appeals Council denied Plaintiff's request for review.  (AR 5-7.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such

evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

A claimant who receives SSI as a child and who remained eligible for SSI for the month before the month in which he turned 18 must have his eligibility for benefits redetermined after turning 18.  20 C.F.R. § 416.987(a).  The ALJ may find that the claimant is not disabled as an adult even though the claimant was previously found to be disabled as a child.  Id.  In

3

evaluating a claimant's continuing disability after age 18, the ALJ follows a modified version of the five-step sequential evaluation process used for adult claimants.  Id.; § 416.920(c)-(h).  The ALJ does not apply the rule in § 416.920(b) to determine whether the claimant is currently engaged in substantial gainful activity.  § 416.987(b).  The ALJ does apply the second through fifth steps of the sequential evaluation process, however.  Id.  The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform his past work; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(iv).  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the ALJ then bears the burden

4

of establishing that the claimant is not disabled because he can perform other substantial gainful work in the national economy. § 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  § 416.987(b); § 416.920.

    B.   The ALJ's Application of the Five-Step Process

     At step one, the ALJ found that Plaintiff turned 18 on December 31, 2006, was eligible for SSI benefits as a child for the month preceding December 2006, and was previously found no longer disabled as of January 1, 2008, based on a redetermination of his disability as an adult.  (AR 18.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of borderline intellectual functioning, depression, generalized anxiety disorder, a history of a learning disorder, attention deficit hyperactivity disorder, and asthma.  (Id.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 18-19.)  At step four, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "no work requiring more than simple repetitive tasks; more than brief and casual contact with coworkers and supervisors; any exposure to heat, cold, hazardous machinery or dangerous heights; and being responsible for the safety of others."  (AR 20.)  The ALJ determined that Plaintiff had no past relevant work.  (AR 23.)  At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (AR 23-24.)  Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 24.)

**V.    DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) rejecting the opinion of Plaintiff's treating physician; (2) finding Plaintiff's subjective symptom testimony not credible; and (3) failing to consider the combined effects of Plaintiff's impairments when determining his RFC.  (J. Stip. at 3.)

> A.   The ALJ Did Not Err in His Consideration of the Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ erred in rejecting his treating physician Dr. Jeanne Hong's opinion that because of the "culmination" of Plaintiff's impairments, "it would prove to be difficult for [Plaintiff] to find and maintain employment."  (J. Stip. at 3-17; AR 519.)  Reversal is not warranted on this basis because Dr. Hong did not opine that Plaintiff was unable to work, and even if she did, the ALJ properly rejected that opinion based on substantial evidence in the record.

> 1.  Applicable law

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

1    The opinions of treating physicians are generally afforded
2  more weight than the opinions of nontreating physicians because
3  treating physicians are employed to cure and have a greater
4  opportunity to know and observe the claimant. Smolen v. Chater,
5  80 F.3d 1273, 1285 (9th Cir. 1996). The weight given a treating
6  physician's opinion depends on whether it was supported by
7  sufficient medical data and was consistent with other evidence in
8  the record. See 20 C.F.R. § 416.927(c)(2). If a treating
9  physician's opinion was well supported by medically acceptable
10  clinical and laboratory diagnostic techniques and is not
11  inconsistent with the other substantial evidence in the record,
12  it should be given controlling weight and rejected only for
13  "clear and convincing" reasons. See Lester, 81 F.3d at 830;
14  § 416.927(c)(2). When a treating physician's opinion conflicts
15  with other medical evidence or was not supported by clinical or
16  laboratory findings, the ALJ must provide only "specific and
17  legitimate reasons" for discounting that doctor's opinion. Orn
18  v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Factors relevant
19  to the evaluation of a treating physician's opinion include the
20  "[l]ength of the treatment relationship and the frequency of
21  examination" as well as the "[n]ature and extent of the treatment
22  relationship" between the patient and the physician.
23  § 416.927(c)(2)(i)-(ii).
24    The ALJ may discredit treating-doctor opinions that are
25  conclusory, brief, and unsupported by the record as a whole or by
26  objective medical findings. See Batson v. Comm'r of Soc. Sec.
27  Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart,
28  278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the

7

opinion of any physician, including a treating physician, if that
opinion is brief, conclusory, and inadequately supported by
clinical findings.").

     2.  <u>Relevant facts</u>

Plaintiff had been seeing Dr. Jeanne Hong, a psychiatrist at
the Van Nuys Medical and Mental Health Services clinic, from
November 2008 to July 2009.  (AR 519-43.)  Plaintiff continued
going to the Van Nuys clinic through April 2010, where he was
treated by Dr. Willmer (first name unknown).  (AR 513-18.)

During her initial assessment of Plaintiff, on November 22,
2008, Dr. Hong noted Plaintiff's history of depression, anxiety,
ADHD, and learning disorders.  (AR 538.)  She also noted that in
the past, his symptoms had "improve[d] on meds"; at that time,
Plaintiff had not been taking any medication for six months.
(<u>Id.</u> (noting Plaintiff "stopped antidepressant 6 [months] ago
after former psychiatrist retired").)  She further noted that he
reported that he had scoliosis and back pain, for which he took
prescription Motrin, and asthma, for which he used an inhaler.
(AR 539.)  He had a "dysphoric" mood, a "constricted" affect, was
"amotivational," and avoided eye contact, but otherwise his
mental status appeared unimpaired – in particular, his motor
activity was calm, his interactional style was "culturally
congruent," he had no apparent perceptual, thought, or behavioral
disturbances, and his memory and intellectual functioning were
unimpaired.  (AR 542.)

From November 2008 through July 2009 Dr. Hong continued to
see Plaintiff approximately once a month.  (AR 520-33.)  During
those sessions she noted that Plaintiff continued to suffer from

anxiety and depression and reported feeling "sad" (AR 532), "isolative" (AR 528), "down on [him]self," "down about life," and "down thinking about human nature" (AR 523, 525-26), and he spent a lot of time watching television instead of socializing (AR 521, 526).  She also noted that as those sessions continued, Plaintiff generally improved: "feels meds have been helpful overall, mood is less depressed" (AR 529) (Jan. 17, 2009); Plaintiff "cont[inues] to feel 'better,' less anxious" (AR 528) (Feb. 7, 2009); Plaintiff "states he has been feeling 'OK . . . better' recently" and "feels Lexapro is helpful" (AR 526) (Mar. 8, 2009); Plaintiff "reports he is doing well," has "0 problems [with] sleep/appetite/energy" and "0 problems [with] meds" (AR 525) (Mar. 28, 2009); Plaintiff "states that he has been doing fairly well, 0 acute issues," continued to have "0 problems [with] sleep/appetite/energy" and "0 problems [with] meds" (AR 523) (Apr. 26, 2009); Plaintiff "states that in general [he is] doing well" and "feels meds have been helpful for mood/anxiety," "denies overt depression" and "sleep/appetite/energy [are] intact," and he suffered no side effects from his medications (AR 522) (May 21, 2009); Plaintiff "states he has been doing fairly well" and "denies depressed mood, denies problems [with] sleep/appetite/energy" (AR 521) (June 21, 2009); and Plaintiff "started on Lexapro, has since shown improvement in mood and anxiety" (AR 520) (July 26, 2009).  During all of those sessions, Plaintiff's mood was noted as "better," "good," or "OK" and his affect was always noted as "euthymic."  (AR 520-29.)

On July 26, 2009, Dr. Hong wrote the following letter "to whom it may concern":

This letter is to state that Lawrence Henry is currently a patient at our clinic. He has been attending appointments at this clinic since 11/22/08 on a monthly basis. Lawrence has a history of Learning Disorder, ADHD. He had IEPs in the past secondary to his problems with dyslexia, reading skills, comprehension, and spelling. He has a history of brain injury resulting from events in his childhood. He also has several other psychiatric diagnoses including Major Depressive Disorder, moderate, and Generalized Anxiety Disorder. His symptoms include depressed mood, poor self-esteem, social anxiety, chronic, generalized worrying. He is taking Lexapro 15 mg po Qdaily [sic] to treat these symptoms. I also understand that he has a history of chronic back pain and has difficulty with prolonged periods of standing; he takes Motrin for his pain. Because of the culmination of all of these factors, I feel that it would prove to be difficult for Lawrence to find and maintain employment.

(AR 519.)

From August 2009 until April 2010, Plaintiff continued to go to the Van Nuys clinic, where he was seen by Dr. Willmer. Similarly to Dr. Hong, Dr. Willmer noted that Plaintiff continued to suffer from depression and anxiety, and his mood during their first three sessions was "guarded" and "dysthymic." (AR 513-18.) But Dr. Willmer also noted that Plaintiff reported he was "doing good, life is fine" (AR 517), and during their later sessions he was "casual, engaged, conversant, smiling/laughing, [and]

pleasant" (AR 513).   In November 2009 Plaintiff reported that he
felt the Lexapro was not working, and in February 2010 Plaintiff
reported that his anxiety had "increased" after he stopped taking
his medications for "a few weeks."  (AR 514-15.)  In April 2010,
however, Dr. Willmer noted that Plaintiff "would like to
[increase] Lexapro" to help with his symptoms, and he described
Plaintiff's depression as "mild" and his anxiety disorder as
"stable."  (AR 513.)

     On May 15, 2008, medical consultant Dr. Greta Johnson issued
a Mental Residual Functional Capacity Assessment.  (AR 409.)  In
it, she found Plaintiff "moderately limited" in the ability to
"understand and remember detailed instructions," "carry out
detailed instructions," "maintain attention and concentration for
extended periods," "perform activities within a schedule,
maintain regular attendance, and be punctual within customary
tolerances," "complete a normal workday and workweek without
interruptions from psychologically based symptoms and to perform
at a consistent pace without an unreasonable number and length of
rest periods," "accept instructions and respond appropriately to
criticism from supervisors," and "respond appropriately to
changes in the work setting."  (AR 409-10.)  In all other
categories, Dr. Johnson found that Plaintiff was "not
significantly limited."  (Id.)  She also found that Plaintiff
"has adequate function to do [simple repetitive tasks]."  (AR
411.)

     During the June 14, 2010 hearing, the ALJ took testimony
from Dr. Borden, who had reviewed the record.  She testified that
Plaintiff had the following impairments: "borderline intellectual

11

functioning," "a history of depression that recently has been treated as a recurrent, moderate, major depressive disorder," "generalized anxiety disorder," and "a history of learning disorder and attention deficit, hyperactivity disorder, with no recent treatment for the ADHD." (AR 573.) She further testified that Plaintiff's impairments either individually or in combination did not meet or equal an impairment in the Listing, but they did create functional limitations. (Id.) Specifically, Dr. Borden noted the following limitations:

> The Claimant is unable to remember and carry out detailed
> instructions. The Claimant would have a significant
> impairment in social interaction. The Claimant would be
> able to have a brief, casual contact with supervisors and
> co-workers, but not with [the] public.

(AR 573-74.)

### 3. <u>Analysis</u>

Plaintiff asserts that the ALJ erred in not properly crediting Dr. Hong's July 26, 2009 opinion that "it would prove to be difficult for [Plaintiff] to find and maintain employment." (J. Stip. at 3-17.) As an initial matter, it is not at all clear that Dr. Hong's note indicated that Plaintiff was unable to work. She stated only that Plaintiff would have a "difficult" time finding and maintaining work; she did not state that it was impossible for him to work or even that he should be precluded from performing specific types of work. Thus, the ALJ could have taken the letter into account and still found Plaintiff able to work. Indeed, the ALJ agreed with Dr. Hong's diagnosis of anxiety and depression as well as a history of learning disorder

12

and ADHD.  (AR 18, 519.)

Moreover, consistent with Dr. Hong's and Dr. Willmer's treatment notes, the ALJ correctly noted that despite Plaintiff's conditions he "admitted he was feeling well or fine and doing better," he "stated that he had shown improvement in mood and anxiety due to therapy and medications," and he "denied any problems with sleep, appetite or energy." (AR 21.)  The ALJ also correctly noted that Dr. Hong's letter made "no specific residual functional capacity assessment," and "the clear progress and improvement [Plaintiff] has made with treatment is not taken into account" in her work determination.[1]  (Id.)  To the extent Dr. Hong's letter failed to recognize Plaintiff's improvement, it was appropriate for the ALJ to discount it on that basis.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2005) (ALJ may reject treating physician's assessment of plaintiff's limitations when physician's notes and other recorded observations contradict assessment).  He was also entitled to reject it because the statement concerning work was brief and conclusory.  See Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957.

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks

---

[1] The ALJ incorrectly stated that the letter was dated July 26, 2008.  (AR 21.)  It was dated July 26, 2009.  The date the ALJ gave appears to be a typographical error and is harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

omitted).  Plaintiff selectively points out places in the
treatment notes where Plaintiff complained of ongoing depression
and anxiety (see J. Stip. at 7-9), but read in the context of the
record as a whole, Plaintiff's symptoms clearly were controllable
with medication, he showed improvement over time, and the ALJ
reasonably found that his limitations did not completely prevent
him from being able to work.

Plaintiff further argues that the ALJ erred in rejecting Dr.
Johnson's opinion, which he alleges was "consistent with the
opinions expressed by Dr. Hong." (J. Stip. at 11.)  But the
ALJ's RFC limiting Plaintiff to "no work requiring more than
simple repetitive tasks," no "more than brief and casual contact
with coworkers and supervisors," and no "being responsible for
the safety of others" is in fact consistent with Dr. Johnson's
evaluation that Plaintiff was "moderately limited" in certain
functions, such as remembering detailed instructions and
interacting with the public. (AR 409-10.)  Nowhere did Dr.
Johnson find that Plaintiff was incapable of working; to the
contrary, like the ALJ, she found that Plaintiff was capable of
performing simple, repetitive tasks. (See AR 411 (finding
Plaintiff "has adequate function to do SRT"); AR 23 (finding
Plaintiff can perform "no work requiring more than simple
repetitive tasks").)

Plaintiff also argues that the ALJ erred in "reject[ing] the
opinions and assessments of Dr. Hong in favor of the . . .
testimony of the medical advisor, Dr. Borden." (J. Stip. at 12.)
As noted above, however, the ALJ did not "reject" Dr. Hong's
opinions – his assessment of Plaintiff's abilities was consistent

14

with them.  Moreover, the ALJ did not err in giving Dr. Borden's opinion "significant weight" because, as the ALJ correctly noted, it was "well supported by the evidence." (AR 23.)  Like Dr. Hong, Dr. Borden recognized that Plaintiff had borderline intellectual functioning, major depression, generalized anxiety disorder, and a history of learning disorders and ADHD. (Compare AR 573 with AR 519.)  Like Dr. Johnson, Dr. Borden also recognized that because of his disorders, Plaintiff would have difficulty following detailed instructions and interacting with the public but could perform simple, repetitive tasks. (Compare AR 573 with AR 409-11.)  If anything, Dr. Borden's assessment of Plaintiff's capacities may have been more restrictive than Dr. Johnson's, because Dr. Borden found Plaintiff would have a "significant impairment" in social interaction, whereas Dr. Johnson found that Plaintiff was only "moderately limited" in certain social abilities. (See AR 573, 409-10.)  Dr. Borden's opinion was also consistent with the other medical opinions of record. (See, e.g., AR 468 (Dr. Yang, noting that Plaintiff's ability to perform "simple tasks" was "unimpaired"); AR 464 (Dr. Colonna, noting that Plaintiff can "understand, remember, and carry out short and simplistic instructions without difficulty").)

     Plaintiff contends that Dr. Borden's testimony was also not reliable because she was "unable to hear all of the testimony presented during the hearing" and "was also not familiar with the standard deviation scoring for the sub-scales for the WAIS III" IQ test. (J. Stip. at 13-17.)  Plaintiff fails to demonstrate how either of these contentions is true or relevant.  First, the

only information Dr. Borden said she had difficulty hearing was
Plaintiff's statement that he picked up his work at the West
Valley Occupational Center and completed it at home, rather than
attending classes in person. (AR 584.) The ALJ subsequently
clarified that information for Dr. Borden, and she stated that it
did not change her opinion. (AR 585.) Plaintiff does not
identify what additional information he alleges Dr. Borden failed
to hear or how it may have affected her opinion. Indeed, the
doctor answered most of the questions without asking for them to
be repeated, indicating that in general she could hear. (See,
e.g., AR 573-80.) Second, as to Plaintiff's contention regarding
the IQ scores, it is not clear from the transcript that Dr.
Borden testified incorrectly; Plaintiff's counsel's questions
were unclear (see, e.g., AR 576-79), and any misstatements Dr.
Borden may have made were likely in response to Plaintiff's
counsel's confusing line of questioning, which the ALJ
interrupted several times to clarify (AR 575, 578). Moreover,
because Plaintiff does not contest the ALJ's finding that his IQ
does not meet an impairment in the Listing (see AR 19; J. Stip.
at 13-17), it is unclear how the standard deviation of his IQ
scores is relevant.

Thus, the ALJ did not err in relying on Dr. Borden's
testimony. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
Cir. 2001) (opinion of nonexamining medical expert "may
constitute substantial evidence when it is consistent with other
independent evidence in the record"). Reversal is therefore not
warranted on this basis.

16

1
2

       B.   <u>The ALJ Did Not Improperly Discount Plaintiff's</u>
            <u>Subjective Symptom Testimony</u>

3    Plaintiff next argues that the ALJ erred in determining
4  Plaintiff's credibility because his opinion included only a
5  "generic discussion of the factors which are utilized in a
6  credibility finding" but "no statement that the Claimant is or is
7  not credible." (J. Stip. at 25-30.) Reversal is not warranted
8  on this basis, however, because the ALJ made specific findings as
9  to Plaintiff's credibility that were consistent with the medical
10 evidence of record.

11          1.   <u>Applicable law</u>
12    An ALJ's assessment of pain severity and claimant
13 credibility is entitled to "great weight." <u>See</u> <u>Weetman v.</u>
14 <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779
15 F.2d 528, 531 (9th Cir. 1986). When the ALJ finds a claimant's
16 subjective complaints not credible, the ALJ must make specific
17 findings that support the conclusion. <u>See</u> <u>Berry v. Astrue</u>, 622
18 F.3d 1228, 1234 (9th Cir. 2010). Absent affirmative evidence of
19 malingering, the ALJ must give "clear and convincing" reasons for
20 rejecting the claimant's testimony. <u>Lester</u>, 81 F.3d at 834. "At
21 the same time, the ALJ is not required to believe every
22 allegation of disabling pain, or else disability benefits would
23 be available for the asking, a result plainly contrary to 42
24 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112
25 (9th Cir. 2012) (internal quotation marks and citation omitted).
26 If the ALJ's credibility finding was supported by substantial
27 evidence in the record, the reviewing court "may not engage in
28 second-guessing." <u>Thomas</u>, 278 F.3d at 959.

                              17

1

        2. <u>Relevant facts</u>

2       At the hearing, Plaintiff testified that he attended high

3 school through the 11th grade and "almost" finished but did not

4 because "[t]he work was very difficult, and I couldn't function

5 very well." (AR 559.) He stated that he was currently "trying

6 to get my GED" "through different kind of programs" but was not

7 presently enrolled because the classes at the program he wished

8 to attend were full. (AR 560, 569.) He testified that he lived

9 at home and during the day he "just sit[s] down a lot" and

10 "[doesn't] really do anything." (AR 561.) He stated that he did

11 not have friends or socialize because he didn't "have good social

12 skills," but he "sometimes" left the house on his own and took

13 the bus to go to fast food restaurants. (AR 561-62.) He also

14 ran "regular errands" with his mother and tried to help with

15 chores, but "I get sort of frustrated when I try to do some of

16 the chores and I can't do it right." (AR 563.) He stated he

17 could do "a little sweeping a little bit" but "standing up is

18 very difficult for me." (<u>Id.</u>) Plaintiff testified that he spent

19 his time "sometimes" listening to classical music, watching

20 television, and reading, although he was not able to read very

21 well. (AR 563-64.) He stated that in the past he tried to apply

22 for "grocery jobs" but the stores were not hiring and it was

23 difficult for him to fill out the applications by himself on a

24 computer. (AR 565.)

25       In his written opinion, the ALJ noted that Plaintiff

26       testified that he was in special education while in

27       school and only finished the 11th grade. He is still

28       working on trying to obtain a GED. So far, he has not

> been successful.  He lives with his mother.  He has
> looked for work but it was difficult filling out the
> applications.  The claimant's mother testified that he
> received services from the Regional Center but only
> through the 5th grade when they were told he did not need
> additional services.

(AR 20.)  The ALJ then summarized the medical evidence of record,
noting that it showed Plaintiff had borderline intellectual
functioning and had been diagnosed with ADHD, "oppositional-
defiant disorder, anxiety disorder, and various depressive
disorders."  (Id.)  Consistent with the medical evidence, as
outlined above, the ALJ further noted that Plaintiff's depression
and anxiety showed improvement over time with counseling and
medication, many of the treatment notes in the record showed that
Plaintiff often reported he was doing well and his mood appeared
normal, and several doctors had opined that Plaintiff was capable
of performing simple, repetitive tasks.  (AR 21.)

Regarding Plaintiff's alleged physical limitations, the ALJ
wrote:

> The remaining evidence shows that for the past few years
> the claimant has received occasional conservative
> treatment for asthma, low back pain, and various minor
> ailments [(AR 545-50)].  Notably, he was described as
> doing well by his primary care physician on July 14, 2009
> [(AR 547)].  His asthma attacks and low back pain were
> described as being only occasional in nature and
> frequency.  A consultative internal examination on
> December 13, 2007 by Jagvinder Singh, M.D. noted that

19

1          although the claimant gave a history of scoliosis there
2          were no physical signs or limitations discernible [(AR
3          458)].  Dr. Singh felt that the claimant could perform a
4          full range of medium work.

5  (AR 22.)  Plaintiff does not challenge these findings.

6          After reciting the standards applicable to an ALJ's
7  credibility finding, the ALJ made the following determination:

8          The above discussed evidence demonstrates that the
9          claimant's level of mental and emotional functioning has
10         significantly improved since the most recent favorable
11         determination.   Although the claimant still has
12         borderline intellectual functioning his symptoms of
13         anxiety and depression have clearly responded to
14         medication and therapy.  His symptoms have only increased
15         when he was non-compliant with treatment.  In addition to
16         the level of functioning noted by Dr. Colonna cited
17         above, the claimant also told Dr. Yang that he was able
18         to do some household chores, errands, shopping, cooking,
19         go places alone, visit with family and friends, and
20         perform all self-care activities independently [(AR
21         467)].  At the hearing, the claimant was able to respond
22         to all questions put to him at the hearing, even
23         multifaceted questions.   The medical expert testified
24         that the record supports claimant's ability to perform
25         simple repetitive tasks involving no more than brief and
26         casual contact with coworkers and supervisors, and no
27         contact with the general public.  The undersigned gives
28         this opinion significant weight as it is well supported

by the evidence.   Regarding the claimant's physical
functioning, there is insufficient objective evidence to
support the claimant's allegation of scoliosis despite
his occasional complaints of low back pain.   However,
even if claimant were limited to light or sedentary work
because of such condition, a substantial number of the
jobs identified by the vocational expert could still be
performed, per his testimony.   The claimant otherwise
would only be subject to environmental restrictions
relating to his asthma condition as determined by the
State Agency consultant [(AR 401-08)].

(AR 23.)

### 3.   Analysis

Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.   The ALJ made several specific
findings supporting his evaluation of Plaintiff's subjective
symptoms.   As noted above, the record showed that Plaintiff's
mental impairments did not limit his ability to perform simple,
repetitive tasks; they improved over time with counseling and
medication; and they got worse only when Plaintiff stopped taking
his medication.   As an initial matter, the ALJ did not
necessarily reject Plaintiff's testimony, because his decision is
largely consistent with it and he never expressly stated that he
did not find Plaintiff credible, either in whole or in part.
Plaintiff did not testify that he was incapable of working.
Rather, he testified that he was trying to get his GED –
indicating that he was capable of learning and doing schoolwork

21

independently – and he was able to leave the house on his own to go to fast food restaurants, do simple chores around the house, and run errands with his mother.  (AR 559-63.)  He also testified that he tried to apply for jobs, indicating that he was capable and willing to work, and the only reason he did not pursue those jobs was that he had trouble filling out the applications on a computer.  (AR 565.)  The ALJ's RFC finding that Plaintiff was capable of performing simple, repetitive tasks appears consistent with Plaintiff's testimony.[2]

Moreover, to the extent Plaintiff's testimony conflicted with the medical evidence, the ALJ properly discounted it.  See, e.g., 20 C.F.R. § 416.929(c)(4)(iv) (ALJ may consider effectiveness of medication in evaluating severity and limiting effects of an impairment); SSR 96-7p, 1996 WL 374186, at *6 ("medical signs and laboratory findings that . . . demonstrate worsening or improvement of the underlying medical condition . . . may also help an adjudicator to draw appropriate inferences about the credibility of an individual's statements"); Tonapetyan, 242 F.3d at 1148 (credibility determination based on, among other things, plaintiff's "tendency to exaggerate" proper when supported by "substantial evidence"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that "contradictions

_____

[2]To the extent Plaintiff's second argument can be interpreted as challenging the ALJ's rejection of Plaintiff's mother's testimony (see J. Stip. at 28-29 (discussing Plaintiff's mother's testimony); but see J. Stip. at 3, 25 (framing second issue as "whether the ALJ erred in determining the credibility of the Plaintiff" (emphasis added)), she testified only that Plaintiff no longer received "services from Regional Center" because "they said he didn't need it anymore."  (AR 572.)  The ALJ's findings are not inconsistent with her testimony.

between claimant's testimony and the relevant medical evidence"
provided clear and convincing reasons for ALJ to reject
plaintiff's subjective symptom testimony).

The ALJ noted that the record showed Plaintiff "was able to
do some household chores, errands, shopping, cooking, go places
alone, visit with family and friends, and perform all self-care
activities independently." (AR 23.)  This observation was
consistent with the evidence of record (see AR 460 (noting
Plaintiff "states that he is depressed because his friends are
all gone"); 467-68 (noting Plaintiff is able to "eat, dress and
bathe independently," "is able to do some household chores,
errands, shopping and cooking," "manages his own money," and
"visits with family and friends, and gets along adequately with
others"), and the ALJ was entitled to rely on that evidence in
rejecting Plaintiff's testimony that he did not engage in those
activities to the extent that testimony implied Plaintiff was
unable to do so.  See Valentine v. Comm'r, Soc. Sec. Admin., 574
F.3d 685, 693 (9th Cir. 2009) (ALJ properly considered claimant's
daily activities in finding claimant's "claims about the severity
of his limitations were exaggerated").  The ALJ was also entitled
to rely on his personal observations that "[a]t the hearing, the
claimant was able to respond to all questions put to him . . .
even multifaceted questions." (AR 23); see Thomas, 278 F.3d at
960 (ALJ properly relied on claimant's "demeanor at the hearing"
in rejecting her credibility); SSR 96-7p, 1996 WL 374186, at *5
("[T]he adjudicator may also consider his or her own recorded
observations of the individual as part of the overall evaluation
of the credibility of the individual's statements.").

23

1    Although Plaintiff does not appear to challenge the ALJ's
2    finding regarding the effects of his scoliosis and back pain, to
3    the extent he does, substantial evidence in the record supported
4    the ALJ's finding that Plaintiff's alleged scoliosis and back
5    problems were not disabling.  (AR 22-23; see AR 458 (noting "no
6    physical signs or limitations" of scoliosis), 468 (noting that
7    Plaintiff "tries to exercise and play basketball").)  Moreover,
8    the ALJ correctly noted that even if Plaintiff were limited to
9    light or sedentary work because of his scoliosis, there were
10   ample jobs in the regional or national economy that he could
11   perform.  (AR 23; see AR 589-90.)  Thus, even if the ALJ erred in
12   holding that Plaintiff's scoliosis did not prevent him from
13   performing all levels of work, the error was harmless.  See Stout
14   v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)
15   (nonprejudicial or irrelevant mistakes harmless).

16   Plaintiff appears to fault the ALJ for not specifically
17   writing the words "the claimant is not credible because . . ."
18   (see J. Stip. at 27 ("without a statement that the Claimant
19   either is or is not credible, this is not a proper credibility
20   analysis"), but as long as the ALJ's analysis of the evidence was
21   supported by the record, to the extent the ALJ rejected
22   Plaintiff's testimony he need not recite any "magic words" in
23   doing so.  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.
24   1989) (ALJ need not "recite the magic words, 'I reject,'" for
25   reviewing court to draw inference from ALJ's decision that ALJ
26   rejected particular evidence).  Because the ALJ's evaluation of
27   Plaintiff's subjective symptom testimony was supported by
28   substantial evidence in the record, reversal is not warranted on

24

1   this basis.

2          C.   <u>The ALJ Did Not Improperly Discount the Combined</u>

3               <u>Effects of Plaintiff's Impairments in Formulating the</u>

4               <u>RFC</u>

5          Plaintiff's final contention is that the ALJ erred by not

6   properly addressing the combined effects of all of Plaintiff's

7   impairments. (J. Stip. at 36-38.)  Specifically, Plaintiff

8   contends that the ALJ did not consider his anxiety in formulating

9   the RFC and did not take into account Dr. Johnson's opinion that

10  he was "moderately limited" in the ability to "understand and

11  remember detailed instructions," "carry out detailed

12  instructions," "maintain attention and concentration for extended

13  periods," "perform activities within a schedule, maintain regular

14  attendance, and be punctual within customary tolerances,"

15  "complete a normal workday and workweek without interruptions

16  from psychologically based symptoms and to perform at a

17  consistent pace without an unreasonable number and length of rest

18  periods," "accept instructions and respond appropriately to

19  criticism from supervisors," and "respond appropriately to

20  changes in the work setting." (<u>Id.</u>; AR 409-10.)  Reversal is not

21  warranted on this basis because the ALJ's RFC took Plaintiff's

22  anxiety into account and was consistent with Dr. Johnson's

23  diagnosis.

24         In conducting an RFC assessment, the ALJ must consider the

25  combined effects of an applicant's medically determinable

26  impairments on the applicant's ability to perform sustainable

27  work.  42 U.S.C. § 423(d)(2)(B); <u>Macri v. Chater</u>, 93 F.3d 540,

28  545 (9th Cir. 1996).  The ALJ must consider all of the relevant

medical opinions as well as the combined effects of all of the
plaintiff's impairments, even those that are not "severe."  20
C.F.R. § 416.945(a); <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th
Cir. 2003).  "[A]n RFC that fails to take into account a
claimant's limitations is defective." <u>Valentine</u>, 574 F.3d at
690.  The ALJ must determine a claimant's limitations on the
basis of "all relevant evidence in the record." <u>Robbins</u>, 466
F.3d at 883.

As noted above, the ALJ's RFC finding was consistent with
the medical evidence of record.  The ALJ specifically recognized
that Plaintiff had been diagnosed with "a generalized anxiety
disorder" (AR 18), and he took that into account by limiting
Plaintiff to performing "simple repetitive tasks," no more than
"brief and casual contact with coworkers and supervisors," and no
"being responsible for the safety of others" (AR 20).  The ALJ's
RFC finding was also consistent with Dr. Johnson's diagnosis
because, as outlined above, it accounted for Plaintiff's
"moderate" limitations in social functioning and the ability to
complete complex tasks by limiting Plaintiff to only "brief and
casual" contact with others and restricting him to performing
only simple, repetitive tasks.  Moreover, as noted above, Dr.
Johnson did not find Plaintiff incapable of working – to the
contrary, like the ALJ, she found Plaintiff was capable of
performing simple, repetitive tasks.  (<u>See</u> AR 411.)  To the
extent Plaintiff argues that the ALJ should have imposed further
restrictions in his RFC, the record does not support the
inclusion of any additional restrictions. <u>See Rollins</u>, 261 F.3d
at 857 ("Because the ALJ included all of the limitations that he

found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [plaintiff] had claimed, but had failed to prove."). Reversal is therefore not warranted on this basis.

**VI.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 2, 2012

JEAN ROSENBLUTH
_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[3]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."