O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAWRENCE ERIC HENRY,

               Plaintiff,

        vs.

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 11-8242-JPR

MEMORANDUM OPINION AND ORDER
AFFIRMING THE COMMISSIONER

**I.   PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Supplemental Security Income ("SSI") benefits.  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed August 27, 2012, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.   BACKGROUND**

     Plaintiff was born on January 1, 1989.  (Administrative

1

Record ("AR") 99.)  He has an 11th-grade education and no work experience.  (AR 49, 66, 541, 559, 587.)  As a child, Plaintiff received SSI benefits because of various learning disabilities and behavioral disorders.  (See AR 150.)  After Plaintiff turned 18, his eligibility was reviewed under the rules for determining disability in adults, and on January 9, 2008, he was found to be no longer disabled under those standards.  (AR 149.)  Plaintiff requested a review of the agency's determination; a State Agency Disability Hearing Officer upheld the determination on August 13, 2008.  (AR 61-70.)

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (AR 70.)  A hearing was held on June 14, 2010, at which Plaintiff, who was represented by counsel, appeared and testified on his own behalf.  (AR 551-98.)  Medical Expert Dr. Betty Borden and Vocational Expert ("VE") Gregory Jones also testified, as did Plaintiff's mother, Charlene Givens.  (AR 573-98.)  In a written decision issued on July 8, 2010, the ALJ determined that Plaintiff was not disabled.  (AR 16-24.)  On August 3, 2011, the Appeals Council denied Plaintiff's request for review.  (AR 5-7.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such

evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

## IV.  THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

A claimant who receives SSI as a child and who remained eligible for SSI for the month before the month in which he turned 18 must have his eligibility for benefits redetermined after turning 18.  20 C.F.R. § 416.987(a).  The ALJ may find that the claimant is not disabled as an adult even though the claimant was previously found to be disabled as a child.  Id.  In

3

evaluating a claimant's continuing disability after age 18, the ALJ follows a modified version of the five-step sequential evaluation process used for adult claimants.  Id.; § 416.920(c)-(h).  The ALJ does not apply the rule in § 416.920(b) to determine whether the claimant is currently engaged in substantial gainful activity.  § 416.987(b).  The ALJ does apply the second through fifth steps of the sequential evaluation process, however.  Id.  The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform his past work; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(iv).  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the ALJ then bears the burden

4

of establishing that the claimant is not disabled because he can
perform other substantial gainful work in the national economy.
§ 416.920(a)(4)(v).  That determination comprises the fifth and
final step in the sequential analysis.  § 416.987(b); § 416.920.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff turned 18 on
December 31, 2006, was eligible for SSI benefits as a child for
the month preceding December 2006, and was previously found no
longer disabled as of January 1, 2008, based on a redetermination
of his disability as an adult.  (AR 18.)  At step two, the ALJ
concluded that Plaintiff had the severe impairments of borderline
intellectual functioning, depression, generalized anxiety
disorder, a history of a learning disorder, attention deficit
hyperactivity disorder, and asthma.  (Id.)  At step three, the
ALJ determined that Plaintiff's impairments did not meet or equal
any of the impairments in the Listing.  (AR 18-19.)  At step
four, the ALJ found that Plaintiff retained the RFC to perform a
full range of work at all exertional levels but with the
following nonexertional limitations: "no work requiring more than
simple repetitive tasks; more than brief and casual contact with
coworkers and supervisors; any exposure to heat, cold, hazardous
machinery or dangerous heights; and being responsible for the
safety of others."  (AR 20.)  The ALJ determined that Plaintiff
had no past relevant work.  (AR 23.)  At step five, the ALJ
concluded that jobs existed in significant numbers in the
national economy that Plaintiff could perform.  (AR 23-24.)
Accordingly, the ALJ determined that Plaintiff was not disabled.
(AR 24.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) rejecting the opinion of Plaintiff's treating physician; (2) finding Plaintiff's subjective symptom testimony not credible; and (3) failing to consider the combined effects of Plaintiff's impairments when determining his RFC.  (J. Stip. at 3.)

   A.   <u>The ALJ Did Not Err in His Consideration of the Opinion of Plaintiff's Treating Physician</u>

Plaintiff contends that the ALJ erred in rejecting his treating physician Dr. Jeanne Hong's opinion that because of the "culmination" of Plaintiff's impairments, "it would prove to be difficult for [Plaintiff] to find and maintain employment."  (J. Stip. at 3-17; AR 519.)  Reversal is not warranted on this basis because Dr. Hong did not opine that Plaintiff was unable to work, and even if she did, the ALJ properly rejected that opinion based on substantial evidence in the record.

      1.  <u>Applicable law</u>

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)."  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

6

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record. See 20 C.F.R. § 416.927(c)(2). If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight and rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; § 416.927(c)(2). When a treating physician's opinion conflicts with other medical evidence or was not supported by clinical or laboratory findings, the ALJ must provide only "specific and legitimate reasons" for discounting that doctor's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Factors relevant to the evaluation of a treating physician's opinion include the "[l]ength of the treatment relationship and the frequency of examination" as well as the "[n]ature and extent of the treatment relationship" between the patient and the physician. § 416.927(c)(2)(i)-(ii).

The ALJ may discredit treating-doctor opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the

1 opinion of any physician, including a treating physician, if that
2 opinion is brief, conclusory, and inadequately supported by
3 clinical findings.").

4         2.  <u>Relevant facts</u>

5     Plaintiff had been seeing Dr. Jeanne Hong, a psychiatrist at
6 the Van Nuys Medical and Mental Health Services clinic, from
7 November 2008 to July 2009.  (AR 519-43.)  Plaintiff continued
8 going to the Van Nuys clinic through April 2010, where he was
9 treated by Dr. Willmer (first name unknown).  (AR 513-18.)

10     During her initial assessment of Plaintiff, on November 22,
11 2008, Dr. Hong noted Plaintiff's history of depression, anxiety,
12 ADHD, and learning disorders.  (AR 538.)  She also noted that in
13 the past, his symptoms had "improve[d] on meds"; at that time,
14 Plaintiff had not been taking any medication for six months.
15 (<u>Id.</u> (noting Plaintiff "stopped antidepressant 6 [months] ago
16 after former psychiatrist retired").)  She further noted that he
17 reported that he had scoliosis and back pain, for which he took
18 prescription Motrin, and asthma, for which he used an inhaler.
19 (AR 539.)  He had a "dysphoric" mood, a "constricted" affect, was
20 "amotivational," and avoided eye contact, but otherwise his
21 mental status appeared unimpaired – in particular, his motor
22 activity was calm, his interactional style was "culturally
23 congruent," he had no apparent perceptual, thought, or behavioral
24 disturbances, and his memory and intellectual functioning were
25 unimpaired.  (AR 542.)

26     From November 2008 through July 2009 Dr. Hong continued to
27 see Plaintiff approximately once a month.  (AR 520-33.)  During
28 those sessions she noted that Plaintiff continued to suffer from

anxiety and depression and reported feeling "sad" (AR 532), "isolative" (AR 528), "down on [him]self," "down about life," and "down thinking about human nature" (AR 523, 525-26), and he spent a lot of time watching television instead of socializing (AR 521, 526).  She also noted that as those sessions continued, Plaintiff generally improved: "feels meds have been helpful overall, mood is less depressed" (AR 529) (Jan. 17, 2009); Plaintiff "cont[inues] to feel 'better,' less anxious" (AR 528) (Feb. 7, 2009); Plaintiff "states he has been feeling 'OK . . . better' recently" and "feels Lexapro is helpful" (AR 526) (Mar. 8, 2009); Plaintiff "reports he is doing well," has "0 problems [with] sleep/appetite/energy" and "0 problems [with] meds" (AR 525) (Mar. 28, 2009); Plaintiff "states that he has been doing fairly well, 0 acute issues," continued to have "0 problems [with] sleep/appetite/energy" and "0 problems [with] meds" (AR 523) (Apr. 26, 2009); Plaintiff "states that in general [he is] doing well" and "feels meds have been helpful for mood/anxiety," "denies overt depression" and "sleep/appetite/energy [are] intact," and he suffered no side effects from his medications (AR 522) (May 21, 2009); Plaintiff "states he has been doing fairly well" and "denies depressed mood, denies problems [with] sleep/appetite/energy" (AR 521) (June 21, 2009); and Plaintiff "started on Lexapro, has since shown improvement in mood and anxiety" (AR 520) (July 26, 2009).  During all of those sessions, Plaintiff's mood was noted as "better," "good," or "OK" and his affect was always noted as "euthymic."  (AR 520-29.)

On July 26, 2009, Dr. Hong wrote the following letter "to whom it may concern":

This letter is to state that Lawrence Henry is currently a patient at our clinic. He has been attending appointments at this clinic since 11/22/08 on a monthly basis. Lawrence has a history of Learning Disorder, ADHD. He had IEPs in the past secondary to his problems with dyslexia, reading skills, comprehension, and spelling. He has a history of brain injury resulting from events in his childhood. He also has several other psychiatric diagnoses including Major Depressive Disorder, moderate, and Generalized Anxiety Disorder. His symptoms include depressed mood, poor self-esteem, social anxiety, chronic, generalized worrying. He is taking Lexapro 15 mg po Qdaily [sic] to treat these symptoms. I also understand that he has a history of chronic back pain and has difficulty with prolonged periods of standing; he takes Motrin for his pain. Because of the culmination of all of these factors, I feel that it would prove to be difficult for Lawrence to find and maintain employment.

(AR 519.)

From August 2009 until April 2010, Plaintiff continued to go to the Van Nuys clinic, where he was seen by Dr. Willmer. Similarly to Dr. Hong, Dr. Willmer noted that Plaintiff continued to suffer from depression and anxiety, and his mood during their first three sessions was "guarded" and "dysthymic." (AR 513-18.) But Dr. Willmer also noted that Plaintiff reported he was "doing good, life is fine" (AR 517), and during their later sessions he was "casual, engaged, conversant, smiling/laughing, [and]

pleasant" (AR 513).  In November 2009 Plaintiff reported that he felt the Lexapro was not working, and in February 2010 Plaintiff reported that his anxiety had "increased" after he stopped taking his medications for "a few weeks." (AR 514-15.)  In April 2010, however, Dr. Willmer noted that Plaintiff "would like to [increase] Lexapro" to help with his symptoms, and he described Plaintiff's depression as "mild" and his anxiety disorder as "stable." (AR 513.)

On May 15, 2008, medical consultant Dr. Greta Johnson issued a Mental Residual Functional Capacity Assessment. (AR 409.)  In it, she found Plaintiff "moderately limited" in the ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "accept instructions and respond appropriately to criticism from supervisors," and "respond appropriately to changes in the work setting." (AR 409-10.)  In all other categories, Dr. Johnson found that Plaintiff was "not significantly limited." (Id.)  She also found that Plaintiff "has adequate function to do [simple repetitive tasks]." (AR 411.)

During the June 14, 2010 hearing, the ALJ took testimony from Dr. Borden, who had reviewed the record.  She testified that Plaintiff had the following impairments: "borderline intellectual

11

functioning," "a history of depression that recently has been
treated as a recurrent, moderate, major depressive disorder,"
"generalized anxiety disorder," and "a history of learning
disorder and attention deficit, hyperactivity disorder, with no
recent treatment for the ADHD." (AR 573.)  She further testified
that Plaintiff's impairments either individually or in
combination did not meet or equal an impairment in the Listing,
but they did create functional limitations. (Id.)  Specifically,
Dr. Borden noted the following limitations:

> The Claimant is unable to remember and carry out detailed
> instructions.  The Claimant would have a significant
> impairment in social interaction.  The Claimant would be
> able to have a brief, casual contact with supervisors and
> co-workers, but not with [the] public.

(AR 573-74.)

### 3.   Analysis

Plaintiff asserts that the ALJ erred in not properly
crediting Dr. Hong's July 26, 2009 opinion that "it would prove
to be difficult for [Plaintiff] to find and maintain employment."
(J. Stip. at 3-17.)  As an initial matter, it is not at all clear
that Dr. Hong's note indicated that Plaintiff was unable to work.
She stated only that Plaintiff would have a "difficult" time
finding and maintaining work; she did not state that it was
impossible for him to work or even that he should be precluded
from performing specific types of work.  Thus, the ALJ could have
taken the letter into account and still found Plaintiff able to
work.  Indeed, the ALJ agreed with Dr. Hong's diagnosis of
anxiety and depression as well as a history of learning disorder

12

1  and ADHD.  (AR 18, 519.)

2      Moreover, consistent with Dr. Hong's and Dr. Willmer's

3  treatment notes, the ALJ correctly noted that despite Plaintiff's

4  conditions he "admitted he was feeling well or fine and doing

5  better," he "stated that he had shown improvement in mood and

6  anxiety due to therapy and medications," and he "denied any

7  problems with sleep, appetite or energy." (AR 21.)  The ALJ also

8  correctly noted that Dr. Hong's letter made "no specific residual

9  functional capacity assessment," and "the clear progress and

10 improvement [Plaintiff] has made with treatment is not taken into

11 account" in her work determination.[1]  (Id.)  To the extent Dr.

12 Hong's letter failed to recognize Plaintiff's improvement, it was

13 appropriate for the ALJ to discount it on that basis.  See

14 Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2005) (ALJ may

15 reject treating physician's assessment of plaintiff's limitations

16 when physician's notes and other recorded observations contradict

17 assessment).  He was also entitled to reject it because the

18 statement concerning work was brief and conclusory.  See Batson,

19 359 F.3d at 1195; Thomas, 278 F.3d at 957.

20      The Court must consider the ALJ's decision in the context of

21 "the entire record as a whole," and if the "evidence is

22 susceptible to more than one rational interpretation, the ALJ's

23 decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528

24 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks

25

26      [1]The ALJ incorrectly stated that the letter was dated July
   26, 2008.  (AR 21.)  It was dated July 26, 2009.  The date the
27 ALJ gave appears to be a typographical error and is harmless.
   See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th
28 Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

1   omitted).   Plaintiff selectively points out places in the
2   treatment notes where Plaintiff complained of ongoing depression
3   and anxiety (see J. Stip. at 7-9), but read in the context of the
4   record as a whole, Plaintiff's symptoms clearly were controllable
5   with medication, he showed improvement over time, and the ALJ
6   reasonably found that his limitations did not completely prevent
7   him from being able to work.

8         Plaintiff further argues that the ALJ erred in rejecting Dr.
9   Johnson's opinion, which he alleges was "consistent with the
10  opinions expressed by Dr. Hong." (J. Stip. at 11.) But the
11  ALJ's RFC limiting Plaintiff to "no work requiring more than
12  simple repetitive tasks," no "more than brief and casual contact
13  with coworkers and supervisors," and no "being responsible for
14  the safety of others" is in fact consistent with Dr. Johnson's
15  evaluation that Plaintiff was "moderately limited" in certain
16  functions, such as remembering detailed instructions and
17  interacting with the public. (AR 409-10.) Nowhere did Dr.
18  Johnson find that Plaintiff was incapable of working; to the
19  contrary, like the ALJ, she found that Plaintiff was capable of
20  performing simple, repetitive tasks. (See AR 411 (finding
21  Plaintiff "has adequate function to do SRT"); AR 23 (finding
22  Plaintiff can perform "no work requiring more than simple
23  repetitive tasks").)

24        Plaintiff also argues that the ALJ erred in "reject[ing] the
25  opinions and assessments of Dr. Hong in favor of the . . .
26  testimony of the medical advisor, Dr. Borden." (J. Stip. at 12.)
27  As noted above, however, the ALJ did not "reject" Dr. Hong's
28  opinions – his assessment of Plaintiff's abilities was consistent

1  with them.  Moreover, the ALJ did not err in giving Dr. Borden's
2  opinion "significant weight" because, as the ALJ correctly noted,
3  it was "well supported by the evidence."  (AR 23.)  Like Dr.
4  Hong, Dr. Borden recognized that Plaintiff had borderline
5  intellectual functioning, major depression, generalized anxiety
6  disorder, and a history of learning disorders and ADHD.  (Compare
7  AR 573 with AR 519.)  Like Dr. Johnson, Dr. Borden also
8  recognized that because of his disorders, Plaintiff would have
9  difficulty following detailed instructions and interacting with
10 the public but could perform simple, repetitive tasks.  (Compare
11 AR 573 with AR 409-11.)  If anything, Dr. Borden's assessment of
12 Plaintiff's capacities may have been more restrictive than Dr.
13 Johnson's, because Dr. Borden found Plaintiff would have a
14 "significant impairment" in social interaction, whereas Dr.
15 Johnson found that Plaintiff was only "moderately limited" in
16 certain social abilities.  (See AR 573, 409-10.)  Dr. Borden's
17 opinion was also consistent with the other medical opinions of
18 record.  (See, e.g., AR 468 (Dr. Yang, noting that Plaintiff's
19 ability to perform "simple tasks" was "unimpaired"); AR 464 (Dr.
20 Colonna, noting that Plaintiff can "understand, remember, and
21 carry out short and simplistic instructions without
22 difficulty").)

23      Plaintiff contends that Dr. Borden's testimony was also not
24 reliable because she was "unable to hear all of the testimony
25 presented during the hearing" and "was also not familiar with the
26 standard deviation scoring for the sub-scales for the WAIS III"
27 IQ test.  (J. Stip. at 13-17.)  Plaintiff fails to demonstrate
28 how either of these contentions is true or relevant.  First, the

1  only information Dr. Borden said she had difficulty hearing was

2  Plaintiff's statement that he picked up his work at the West

3  Valley Occupational Center and completed it at home, rather than

4  attending classes in person.  (AR 584.)  The ALJ subsequently

5  clarified that information for Dr. Borden, and she stated that it

6  did not change her opinion.  (AR 585.)  Plaintiff does not

7  identify what additional information he alleges Dr. Borden failed

8  to hear or how it may have affected her opinion.  Indeed, the

9  doctor answered most of the questions without asking for them to

10 be repeated, indicating that in general she could hear.  (See,

11 e.g., AR 573-80.)  Second, as to Plaintiff's contention regarding

12 the IQ scores, it is not clear from the transcript that Dr.

13 Borden testified incorrectly; Plaintiff's counsel's questions

14 were unclear (see, e.g., AR 576-79), and any misstatements Dr.

15 Borden may have made were likely in response to Plaintiff's

16 counsel's confusing line of questioning, which the ALJ

17 interrupted several times to clarify (AR 575, 578).  Moreover,

18 because Plaintiff does not contest the ALJ's finding that his IQ

19 does not meet an impairment in the Listing (see AR 19; J. Stip.

20 at 13-17), it is unclear how the standard deviation of his IQ

21 scores is relevant.

22      Thus, the ALJ did not err in relying on Dr. Borden's

23 testimony.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

24 Cir. 2001) (opinion of nonexamining medical expert "may

25 constitute substantial evidence when it is consistent with other

26 independent evidence in the record").  Reversal is therefore not

27 warranted on this basis.

28

B.   <u>The ALJ Did Not Improperly Discount Plaintiff's</u>
     <u>Subjective Symptom Testimony</u>

Plaintiff next argues that the ALJ erred in determining Plaintiff's credibility because his opinion included only a "generic discussion of the factors which are utilized in a credibility finding" but "no statement that the Claimant is or is not credible." (J. Stip. at 25-30.) Reversal is not warranted on this basis, however, because the ALJ made specific findings as to Plaintiff's credibility that were consistent with the medical evidence of record.

1.   <u>Applicable law</u>

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." <u>See</u> <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony. <u>Lester</u>, 81 F.3d at 834. "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted). If the ALJ's credibility finding was supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

17

1          2.  <u>Relevant facts</u>

2          At the hearing, Plaintiff testified that he attended high

3    school through the 11th grade and "almost" finished but did not

4    because "[t]he work was very difficult, and I couldn't function

5    very well."  (AR 559.)  He stated that he was currently "trying

6    to get my GED" "through different kind of programs" but was not

7    presently enrolled because the classes at the program he wished

8    to attend were full.  (AR 560, 569.)  He testified that he lived

9    at home and during the day he "just sit[s] down a lot" and

10   "[doesn't] really do anything."  (AR 561.)  He stated that he did

11   not have friends or socialize because he didn't "have good social

12   skills," but he "sometimes" left the house on his own and took

13   the bus to go to fast food restaurants.  (AR 561-62.)  He also

14   ran "regular errands" with his mother and tried to help with

15   chores, but "I get sort of frustrated when I try to do some of

16   the chores and I can't do it right."  (AR 563.)  He stated he

17   could do "a little sweeping a little bit" but "standing up is

18   very difficult for me."  (<u>Id.</u>)  Plaintiff testified that he spent

19   his time "sometimes" listening to classical music, watching

20   television, and reading, although he was not able to read very

21   well.  (AR 563-64.)  He stated that in the past he tried to apply

22   for "grocery jobs" but the stores were not hiring and it was

23   difficult for him to fill out the applications by himself on a

24   computer.  (AR 565.)

25         In his written opinion, the ALJ noted that Plaintiff

26         testified that he was in special education while in

27         school and only finished the 11th grade.  He is still

28         working on trying to obtain a GED.  So far, he has not

18

> been successful.  He lives with his mother.  He has
> looked for work but it was difficult filling out the
> applications.  The claimant's mother testified that he
> received services from the Regional Center but only
> through the 5th grade when they were told he did not need
> additional services.

(AR 20.)  The ALJ then summarized the medical evidence of record, noting that it showed Plaintiff had borderline intellectual functioning and had been diagnosed with ADHD, "oppositional-defiant disorder, anxiety disorder, and various depressive disorders."  (<u>Id.</u>)  Consistent with the medical evidence, as outlined above, the ALJ further noted that Plaintiff's depression and anxiety showed improvement over time with counseling and medication, many of the treatment notes in the record showed that Plaintiff often reported he was doing well and his mood appeared normal, and several doctors had opined that Plaintiff was capable of performing simple, repetitive tasks.  (AR 21.)

Regarding Plaintiff's alleged physical limitations, the ALJ wrote:

> The remaining evidence shows that for the past few years
> the claimant has received occasional conservative
> treatment for asthma, low back pain, and various minor
> ailments [(AR 545-50)].  Notably, he was described as
> doing well by his primary care physician on July 14, 2009
> [(AR 547)].  His asthma attacks and low back pain were
> described as being only occasional in nature and
> frequency.  A consultative internal examination on
> December 13, 2007 by Jagvinder Singh, M.D. noted that

19

1    although the claimant gave a history of scoliosis there
2    were no physical signs or limitations discernible [(AR
3    458)].  Dr. Singh felt that the claimant could perform a
4    full range of medium work.

5    (AR 22.)  Plaintiff does not challenge these findings.

6        After reciting the standards applicable to an ALJ's
7    credibility finding, the ALJ made the following determination:

8        The above discussed evidence demonstrates that the
9        claimant's level of mental and emotional functioning has
10       significantly improved since the most recent favorable
11       determination.    Although   the   claimant   still   has
12       borderline   intellectual   functioning   his   symptoms   of
13       anxiety   and   depression   have   clearly   responded   to
14       medication and therapy.  His symptoms have only increased
15       when he was non-compliant with treatment.  In addition to
16       the  level  of  functioning  noted  by  Dr.  Colonna  cited
17       above, the claimant also told Dr. Yang that he was able
18       to do some household chores, errands, shopping, cooking,
19       go  places  alone,  visit  with  family  and  friends,  and
20       perform   all   self-care   activities   independently   [(AR
21       467)].  At the hearing, the claimant was able to respond
22       to  all  questions  put  to  him  at  the  hearing,  even
23       multifaceted questions.   The medical expert testified
24       that the record supports claimant's ability to perform
25       simple repetitive tasks involving no more than brief and
26       casual  contact  with  coworkers  and  supervisors,  and  no
27       contact with the general public.  The undersigned gives
28       this opinion significant weight as it is well supported

by the evidence.   Regarding the claimant's physical
functioning, there is insufficient objective evidence to
support the claimant's allegation of scoliosis despite
his occasional complaints of low back pain.   However,
even if claimant were limited to light or sedentary work
because of such condition, a substantial number of the
jobs identified by the vocational expert could still be
performed, per his testimony.   The claimant otherwise
would only be subject to environmental restrictions
relating to his asthma condition as determined by the
State Agency consultant [(AR 401-08)].

(AR 23.)

### 3.   Analysis

Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.   The ALJ made several specific
findings supporting his evaluation of Plaintiff's subjective
symptoms.   As noted above, the record showed that Plaintiff's
mental impairments did not limit his ability to perform simple,
repetitive tasks; they improved over time with counseling and
medication; and they got worse only when Plaintiff stopped taking
his medication.   As an initial matter, the ALJ did not
necessarily reject Plaintiff's testimony, because his decision is
largely consistent with it and he never expressly stated that he
did not find Plaintiff credible, either in whole or in part.
Plaintiff did not testify that he was incapable of working.
Rather, he testified that he was trying to get his GED –
indicating that he was capable of learning and doing schoolwork

independently – and he was able to leave the house on his own to go to fast food restaurants, do simple chores around the house, and run errands with his mother.  (AR 559-63.)  He also testified that he tried to apply for jobs, indicating that he was capable and willing to work, and the only reason he did not pursue those jobs was that he had trouble filling out the applications on a computer.  (AR 565.)  The ALJ's RFC finding that Plaintiff was capable of performing simple, repetitive tasks appears consistent with Plaintiff's testimony.[2]

Moreover, to the extent Plaintiff's testimony conflicted with the medical evidence, the ALJ properly discounted it.  See, e.g., 20 C.F.R. § 416.929(c)(4)(iv) (ALJ may consider effectiveness of medication in evaluating severity and limiting effects of an impairment); SSR 96-7p, 1996 WL 374186, at *6 ("medical signs and laboratory findings that . . . demonstrate worsening or improvement of the underlying medical condition . . . may also help an adjudicator to draw appropriate inferences about the credibility of an individual's statements"); Tonapetyan, 242 F.3d at 1148 (credibility determination based on, among other things, plaintiff's "tendency to exaggerate" proper when supported by "substantial evidence"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that "contradictions

---

[2]To the extent Plaintiff's second argument can be interpreted as challenging the ALJ's rejection of Plaintiff's mother's testimony (see J. Stip. at 28-29 (discussing Plaintiff's mother's testimony); but see J. Stip. at 3, 25 (framing second issue as "whether the ALJ erred in determining the credibility of the Plaintiff" (emphasis added)), she testified only that Plaintiff no longer received "services from Regional Center" because "they said he didn't need it anymore."  (AR 572.)  The ALJ's findings are not inconsistent with her testimony.

1    between claimant's testimony and the relevant medical evidence"
2    provided clear and convincing reasons for ALJ to reject
3    plaintiff's subjective symptom testimony).

4         The ALJ noted that the record showed Plaintiff "was able to
5    do some household chores, errands, shopping, cooking, go places
6    alone, visit with family and friends, and perform all self-care
7    activities independently." (AR 23.)  This observation was
8    consistent with the evidence of record (see AR 460 (noting
9    Plaintiff "states that he is depressed because his friends are
10   all gone"); 467-68 (noting Plaintiff is able to "eat, dress and
11   bathe independently," "is able to do some household chores,
12   errands, shopping and cooking," "manages his own money," and
13   "visits with family and friends, and gets along adequately with
14   others"), and the ALJ was entitled to rely on that evidence in
15   rejecting Plaintiff's testimony that he did not engage in those
16   activities to the extent that testimony implied Plaintiff was
17   unable to do so.  See Valentine v. Comm'r, Soc. Sec. Admin., 574
18   F.3d 685, 693 (9th Cir. 2009) (ALJ properly considered claimant's
19   daily activities in finding claimant's "claims about the severity
20   of his limitations were exaggerated").  The ALJ was also entitled
21   to rely on his personal observations that "[a]t the hearing, the
22   claimant was able to respond to all questions put to him . . .
23   even multifaceted questions."  (AR 23); see Thomas, 278 F.3d at
24   960 (ALJ properly relied on claimant's "demeanor at the hearing"
25   in rejecting her credibility); SSR 96-7p, 1996 WL 374186, at *5
26   ("[T]he adjudicator may also consider his or her own recorded
27   observations of the individual as part of the overall evaluation
28   of the credibility of the individual's statements.").

                                  23

1   Although Plaintiff does not appear to challenge the ALJ's
2   finding regarding the effects of his scoliosis and back pain, to
3   the extent he does, substantial evidence in the record supported
4   the ALJ's finding that Plaintiff's alleged scoliosis and back
5   problems were not disabling.  (AR 22-23; <u>see</u> AR 458 (noting "no
6   physical signs or limitations" of scoliosis), 468 (noting that
7   Plaintiff "tries to exercise and play basketball").)  Moreover,
8   the ALJ correctly noted that even if Plaintiff were limited to
9   light or sedentary work because of his scoliosis, there were
10  ample jobs in the regional or national economy that he could
11  perform.  (AR 23; <u>see</u> AR 589-90.)  Thus, even if the ALJ erred in
12  holding that Plaintiff's scoliosis did not prevent him from
13  performing all levels of work, the error was harmless.  <u>See</u> <u>Stout</u>
14  <u>v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)
15  (nonprejudicial or irrelevant mistakes harmless).
16      Plaintiff appears to fault the ALJ for not specifically
17  writing the words "the claimant is not credible because . . ."
18  (<u>see</u> J. Stip. at 27 ("without a statement that the Claimant
19  either is or is not credible, this is not a proper credibility
20  analysis"), but as long as the ALJ's analysis of the evidence was
21  supported by the record, to the extent the ALJ rejected
22  Plaintiff's testimony he need not recite any "magic words" in
23  doing so.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir.
24  1989) (ALJ need not "recite the magic words, 'I reject,'" for
25  reviewing court to draw inference from ALJ's decision that ALJ
26  rejected particular evidence).  Because the ALJ's evaluation of
27  Plaintiff's subjective symptom testimony was supported by
28  substantial evidence in the record, reversal is not warranted on

24

1  this basis.

2      C.   <u>The ALJ Did Not Improperly Discount the Combined</u>

3           <u>Effects of Plaintiff's Impairments in Formulating the</u>

4           <u>RFC</u>

5          Plaintiff's final contention is that the ALJ erred by not

6  properly addressing the combined effects of all of Plaintiff's

7  impairments.  (J. Stip. at 36-38.)  Specifically, Plaintiff

8  contends that the ALJ did not consider his anxiety in formulating

9  the RFC and did not take into account Dr. Johnson's opinion that

10 he was "moderately limited" in the ability to "understand and

11 remember detailed instructions," "carry out detailed

12 instructions," "maintain attention and concentration for extended

13 periods," "perform activities within a schedule, maintain regular

14 attendance, and be punctual within customary tolerances,"

15 "complete a normal workday and workweek without interruptions

16 from psychologically based symptoms and to perform at a

17 consistent pace without an unreasonable number and length of rest

18 periods," "accept instructions and respond appropriately to

19 criticism from supervisors," and "respond appropriately to

20 changes in the work setting."  (<u>Id.</u>; AR 409-10.)  Reversal is not

21 warranted on this basis because the ALJ's RFC took Plaintiff's

22 anxiety into account and was consistent with Dr. Johnson's

23 diagnosis.

24     In conducting an RFC assessment, the ALJ must consider the

25 combined effects of an applicant's medically determinable

26 impairments on the applicant's ability to perform sustainable

27 work.  42 U.S.C. § 423(d)(2)(B); <u>Macri v. Chater</u>, 93 F.3d 540,

28 545 (9th Cir. 1996).  The ALJ must consider all of the relevant

medical opinions as well as the combined effects of all of the
plaintiff's impairments, even those that are not "severe."   20
C.F.R. § 416.945(a); <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th
Cir. 2003).   "[A]n RFC that fails to take into account a
claimant's limitations is defective."   <u>Valentine</u>, 574 F.3d at
690.   The ALJ must determine a claimant's limitations on the
basis of "all relevant evidence in the record."   <u>Robbins</u>, 466
F.3d at 883.

     As noted above, the ALJ's RFC finding was consistent with
the medical evidence of record.   The ALJ specifically recognized
that Plaintiff had been diagnosed with "a generalized anxiety
disorder" (AR 18), and he took that into account by limiting
Plaintiff to performing "simple repetitive tasks," no more than
"brief and casual contact with coworkers and supervisors," and no
"being responsible for the safety of others" (AR 20).   The ALJ's
RFC finding was also consistent with Dr. Johnson's diagnosis
because, as outlined above, it accounted for Plaintiff's
"moderate" limitations in social functioning and the ability to
complete complex tasks by limiting Plaintiff to only "brief and
casual" contact with others and restricting him to performing
only simple, repetitive tasks.   Moreover, as noted above, Dr.
Johnson did not find Plaintiff incapable of working – to the
contrary, like the ALJ, she found Plaintiff was capable of
performing simple, repetitive tasks.   (<u>See</u> AR 411.)   To the
extent Plaintiff argues that the ALJ should have imposed further
restrictions in his RFC, the record does not support the
inclusion of any additional restrictions.   <u>See Rollins</u>, 261 F.3d
at 857 ("Because the ALJ included all of the limitations that he

found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [plaintiff] had claimed, but had failed to prove."). Reversal is therefore not warranted on this basis.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 2, 2012

JEAN ROSENBLUTH

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[3]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."